**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **MELANEY DAO**, *et al.*, | ) | |
| **Plaintiffs,** | ) | |
| v. | ) | |
| | ) | **Case No. 1:19-cv-649** |
| **PAUL M. FAUSTIN**, *et al.*, | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

This case arises from the alleged workplace harassment of plaintiffs Dao and Khan, former employees of defendant Infused Solutions, LLC ("Infused"), by defendant Faustin, the Chief Financial Officer of defendant Infused. In the Second Amended Complaint, plaintiffs bring various state law claims against defendant Faustin, including assault and battery, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of fiduciary duty, and negligence. Plaintiffs also allege that defendant Infused is vicariously liable for certain of these state law claims under the doctrine of *respondeat superior* and that defendant Infused is also liable for hostile work environment and retaliation under Title VII and negligent retention under Virginia law. At issue in this matter are defendants' motions to dismiss plaintiffs' Second Amended Complaint for failure to state a claim. For the reasons that follow, defendants' motion to dismiss must be granted in part and denied in part.

### I.

The well-settled motion to dismiss standard does not require extensive elaboration. As the Supreme Court has made clear, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

1

570 (2007)). Importantly, in making this determination the district court must "accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff]." *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015). But the district court is not bound to "accept as true a legal conclusion couched as a factual allegation." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014).

## II.

In his motion to dismiss, defendant Faustin argues that dismissal is warranted with respect to the state law claims brought against him (i) because the claims are time-barred and (ii) because the claims fail to state a claim under Virginia law. Each of these arguments is addressed in turn.

## A.

Defendant Faustin first argues that plaintiffs' state law claims are barred by the applicable statute of limitations. Under Virginia law, actions for personal injury and for breach of fiduciary duty must be brought within two years after the cause of action accrues. *See* Va. Code §§ 8.01-243(A), 8.01-248. Thus, as the parties agree, each of plaintiffs' state law claims against defendant Faustin is subject to a two-year statute of limitations.[1] This two-year statute of limitations period began to run for plaintiffs' personal injury claims "when the wrong [was] committed" and for their breach of fiduciary duty claims on "the date of the alleged breach." *Castillo v. Emergency Med. Assocs., P.A.*, 372 F.3d 643, 646 (4th Cir. 2004); *Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 424 (E.D. Va. 2011). Here, the initial Complaint bringing plaintiff's state law claims against defendant Faustin was filed by plaintiffs on June 27, 2018. Accordingly, to be

---

[1] *See Wheeler v. Virginia*, No. 7:17CV00337, 2018 WL 325202, at *2 (W.D. Va. Jan. 8, 2018) ("Claims for assault and battery are subject to the two-year limitations period prescribed by Virginia Code § 8.01-243(A)."); *Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 424 (E.D. Va. 2011) ("An action for breach of fiduciary duty is subject to a two-year statute of limitations.") (citing Va. Code § 8.01-248); *Douglas v. Dabney S. Lancaster Cmty. Coll.*, 990 F. Supp. 447, 465 (W.D. Va. 1997) (holding that "a cause of action for emotional distress is governed by the two-year statute of limitations for personal injury actions") (citing Va. Code § 8.01-243).

timely, plaintiffs' state law claims must be based on alleged wrongful acts or breaches of fiduciary duty that occurred between June 27, 2016 and June 27, 2018.

Defendant Faustin goes one step further, however, arguing that plaintiffs' state law claims are time-barred *in full* because they are based *in part* on alleged actions by defendant Faustin that occurred before June 27, 2016. In support of this argument, defendant Faustin relies entirely on *Wheeler v. Virginia*, No. 7:17CV00337, 2018 WL 325202, at *2 (W.D. Va. Jan. 8, 2018). But that decision did not reach the holding that defendant Faustin contends. Rather, the district court in *Wheeler* held that the claim at issue there was "*partially* time-barred to the extent that it is based on acts that fall outside the limitations period." *Id.* (emphasis added). The *Wheeler* court did not, contrary to defendant Faustin's assertion, hold that the claim was time-barred in its entirety simply because the claim was based on alleged conduct occurring both before and after the statute of limitations began to run. *See id.* at *2–3 (granting the defendant's *partial* motion to dismiss and dismissing Count II of the plaintiff's complaint *in part* as time-barred). Accordingly, *Wheeler* does not stand for the proposition for which it is cited by defendant Faustin, and the fact that plaintiffs' claims are based on alleged conduct occurring both before and during the limitations period does not render plaintiffs' claims time-barred in full. Instead, as plaintiffs correctly recognize, plaintiffs' state law claims against defendant Faustin are time-barred in part only to the extent that such claims are based on alleged conduct by defendant Faustin that occurred before June 27, 2016.[2]

---

[2] Although it is unnecessary to address here whether alleged conduct and events occurring before June 27, 2016 might be admissible in this case for some other purpose—such as to show intent or motive under Rule 404(b), Fed. R. Evid., as plaintiffs suggest—it is worth noting that "[s]tatutes of limitations do not operate as an evidentiary bar controlling the evidence admissible at the trial of a timely-filed cause of action." *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 346 (4th Cir. 1994); *see also Phyllene W. v. Huntsville City Bd. of Educ.*, 630 Fed. Appx. 917, 925–26 (11th Cir. 2015) ("Statutes of limitations operate to bar *claims* that mature outside the limitations period. . . . But, *evidence* that is relevant to establish claims maturing within [the] limitations period is admissible.") (emphasis in original). Thus, the fact that plaintiffs' state law claims have been deemed here to be partially time-barred to the extent they are based on conduct by defendant Faustin occurring prior to June 27, 2016 in no way addresses or decides the issue whether that earlier conduct may nonetheless be admissible as evidence in this case.

Here, it is clear that plaintiffs' claims are based at least in part on alleged conduct by defendant Faustin occurring after June 27, 2016.[3] Thus, to the extent that plaintiffs' claims are based on conduct occurring after that date, such claims are timely and may proceed.

## B.

Defendant Faustin next argues that dismissal of plaintiffs' state law claims is warranted on the ground that plaintiffs have not pled sufficient facts to state any claim upon which relief can be granted. Each of plaintiffs' state law claims against defendant Faustin is analyzed separately below.

## 1.

In Counts 1 and 2 of the Second Amended Complaint, plaintiffs each bring a cause of action against defendant Faustin for assault and battery. Importantly, although assault and battery "go together like ham and eggs," they are considered to be "two independent torts" under Virginia law. *Koffman v. Garnett*, 265 Va. 12, 16 (2003). As the Supreme Court of Virginia has explained, the elements of assault are (1) "an act intended to cause either [(a)] harmful or offensive contact with another person or [(b)] apprehension of such contact" (2) "that creates in that other person's mind a reasonable apprehension of an imminent battery." *Id.* (citing Restatement (Second) of Torts § 21 (1965)). In contrast, battery requires a showing of (1) "an unwanted touching which is neither consented to, excused, nor justified" (2) that is "offensive" and (3) that is "done in a rude, insolent, or angry manner." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 411 (4th Cir. 2013) (quoting *Koffman*, 265 Va. at 16; Restatement (Second) of Torts § 18; and *Crosswhite v. Barnes*,

---

[3] *See, e.g.*, Second Am. Compl. ¶ 45 (alleging that "in the beginning of 2017" defendant Faustin grabbed plaintiff Dao's hand while she was riding with him in a car for work matters); *id.* ¶¶ 42–43, 69, 71, 85–88 (alleging that defendant Faustin worked in the same office as plaintiffs Dao and Khan during a period of time including June 27, 2016 through April 24, 2017 and that during that time defendant forcibly made physical contact with plaintiffs' bodies "on a near daily basis").

139 Va. 471, 477 (1924)). It is settled that "[a] bodily contact is offensive if it offends a reasonable sense of personal dignity . . . judged by an objective standard, not by whether the plaintiff found the act offensive." *Id.* (citing Restatement (Second) of Torts §§ 18, 19).

Plaintiffs have alleged sufficient facts to state claims of battery against defendant Faustin. Plaintiff Dao alleges that on one occasion in the beginning of 2017, defendant Faustin grabbed plaintiff Dao's hand while they were riding in a car together for a work-related matter. Second Am. Compl. ¶ 45. Plaintiff Dao shook her hand away from defendant Faustin and told him not to touch her. *Id.* Plaintiff Dao further alleges that on numerous other occasions, indeed "on a near daily basis," defendant Faustin would instruct plaintiff Dao to come close to him and would "forcibly pull" her towards himself and hug her. *Id.* ¶ 42. Often, defendant Faustin "forcibly held [plaintiff] Dao in a hug for an extended period of time." ¶ 43. Plaintiff Dao alleges that she "frequently resisted," that she was "reluctant[]" to come close to defendant Faustin, and that she "tried to physically force him away from her." *Id.* ¶¶ 42–43. Importantly, prior to the occurrence of these hand grabbings and forced hugs, Dao had told defendant Faustin "not to touch her and that she does not like to be touched, especially by men, due to past sexual abuse." *Id.* ¶ 40.

These allegations, viewed in the light most favorable to plaintiff Dao, are sufficient to state a claim for battery upon which relief can be granted. First, it is clear that the touchings of plaintiff Dao by defendant Faustin were unwanted and were not consented to, excused, or justified. As the above allegations reflect, plaintiff Dao made clear to defendant Faustin that she did not want to be touched by him and that she resisted his attempts to hug her and grab her hand. Second, under an objective standard, these incidents of bodily contact "offend a reasonable sense of personal dignity" and are thus "offensive" for purposes of the battery claim. *See Balas*, 711 F.3d at 411. The facts alleged demonstrate that defendant Faustin's repeated contact with plaintiff Dao's body

was done in blatant disregard of plaintiff's Dao's obvious discomfort with and resistance to his physical advances. Third, for similar reasons, these allegations reflect that defendant Faustin's alleged touchings were done in a "rude" or "insolent" manner. *See id.* According to the Second Amended Complaint, defendant Faustin's contact with plaintiff Dao's body was forcible and was done in disregard of plaintiff Dao's attempts to resist and in disregard of her clear distress caused by defendant Faustin's behavior. Thus, plaintiff Dao has pled sufficient facts to state a claim of battery against defendant Faustin.

Plaintiff Khan has also pled sufficient allegations to state a claim of battery against defendant Faustin. Like plaintiff Dao, plaintiff Khan alleges that "each day" defendant Faustin would instruct plaintiff Khan to come close to him and then would "forcibly hug her." Second Am. Compl. ¶ 69. On numerous occasions, plaintiff Khan "tried to resist," refused to come see defendant Faustin in person, cried in front of defendant Faustin, and asked him to leave her alone. *Id.* ¶¶ 69, 71. For the same reasons discussed above with respect to plaintiff Dao, when viewed in the light most favorable to plaintiff Khan, these allegations are certainly sufficient to state a claim of battery against defendant Faustin.

Seeking to avoid this result, defendant Faustin argues that the Fourth Circuit's decision in *Balas* compels the conclusion that defendant Faustin's alleged conduct was not objectively offensive. This argument fails because the facts in *Balas* are plainly distinguishable from those alleged here. In *Balas*, the Fourth Circuit affirmed summary judgment in favor of the defendant on the plaintiff's battery claim, holding that a reasonable person could not find a hug by the defendant that made the plaintiff uncomfortable to be objectively offensive. *Balas*, 711 F.3d at 411. In support of this holding, the Fourth Circuit observed that before the defendant hugged the plaintiff, the plaintiff had just given the defendant a Christmas gift and the defendant had "thanked

6

her and told her that she never ceased to amaze him." *Id.* Accordingly, the Fourth Circuit concluded that the challenged conduct, *i.e.* a hug in response to receiving a Christmas gift, was not "unwarranted by the social usages prevalent at the time and place at which it is inflicted," as is required for a touching to constitute battery. And importantly, the plaintiff "never told [the defendant] to stop or that the hug was unwelcome." *Id.* Here, by contrast, both plaintiffs repeatedly told defendant Faustin not to hug them and expressed clear distress when defendant Faustin continued to do so. And there is no basis on which to conclude that defendant Faustin's allegedly forcible contact with plaintiffs' bodies against their will was warranted by any prevalent social usages. Therefore, *Balas* is distinguishable and does not preclude the result reached here.

Defendant Faustin also argues that the allegations in the Second Amended Complaint show that the alleged touchings of plaintiffs' bodies by defendant Faustin were intended to be friendly in nature and thus were not done in a rude or insolent manner. In support of this argument, defendant Faustin observes that the Second Amended alleges that in certain instances when he made physical contact with plaintiffs, defendant Faustin made comments such as "You know I care about you, right?" or that "it was his job to desensitize [plaintiff Dao] to male touch and that [the hugs were] her therapy to help her get over her childhood sexual abuse." *See* Second Am. Compl. ¶¶ 40, 45. Although one conceivable inference from these allegations is that defendant Faustin's touchings of plaintiffs' bodies were amiable in nature and not rude or insolent, the Second Amended Complaint must be construed "in the light most favorable to [plaintiffs]" at the motion to dismiss stage. *See Triple Canopy*, 775 F.3d at 632 n.1. In this respect, a finder of fact could certainly draw the opposite inference based on plaintiffs' allegations that defendant Faustin touched plaintiffs despite being told not to touch them and plaintiffs' clear distress when he did so

anyway. Accordingly, plaintiffs have alleged sufficient facts to show defendant Faustin touched plaintiffs in a rude or insolent manner.

It is also clear that plaintiffs have alleged sufficient facts with respect to their assault claims to survive the motion to dismiss stage. As stated above, plaintiffs can state a claim of assault under Virginia law by alleging facts to show (1) "an act intended to cause . . . offensive contact with another person" (2) "that creates in that other person's mind a reasonable apprehension of an imminent battery." *Koffman*, 265 Va. at 16. The factual allegations in the Second Amended Complaint discussed above clearly allege several acts by defendant Faustin that were intended to cause, and in fact did cause, offensive contact with both plaintiffs. In addition, the Second Amended Complaint includes facts showing that such conduct created in plaintiffs' minds a reasonable apprehension of an imminent battery. *See, e.g.*, Second Am. Compl. ¶ 42–44, 69, 71, 101, 113 (alleging that plaintiffs tried to resist defendant Faustin's attempts to touch them in an offensive manner, and that such conduct by defendant Faustin's "threatening conduct" caused plaintiffs to fear "offensive sexual misconduct"). Accordingly, plaintiffs have pled sufficient facts to state claims of assault against defendant Faustin.

## 2.

In Counts 5 and 6 of the Second Amended Complaint, plaintiffs each bring a cause of action against defendant Faustin for intentional infliction of emotional distress. The Supreme Court of Virginia has made clear that such causes of action "are not favored in the law." *Russo v. White*, 241 Va. 23, 26 (1991). To establish a claim of intentional infliction of emotional distress, plaintiffs must show that "the wrongdoer's conduct is intentional or reckless; the conduct is outrageous and intolerable; the alleged wrongful conduct and emotional distress are causally connected; and, the distress is severe." *Id.* A defendant's conduct may be deemed "outrageous and intolerable" only if

8

it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 27. The Supreme Court of Virginia has held that "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Womack v. Eldridge*, 215 Va. 338, 342 (1974). But if "reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *Id.*

Here, plaintiffs fail to state claims of intentional infliction of emotional distress because the Second Amended Complaint does not allege facts from which a jury could reasonably find that defendant Faustin's conduct was sufficiently extreme or outrageous. To be sure, as already discussed, defendant Faustin's alleged forcible physical contact with plaintiffs' bodies despite plaintiffs telling him not to and their clear anguish when he did so anyway is offensive, unacceptable, and wrongful. Nonetheless, such alleged actions by Faustin do not meet the high threshold of conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Russo*, 241 Va. at 27. Indeed, the outrageous and intolerable "prong is seldom met by plaintiffs under Virginia law." *Crittendon v. Arai Americas, Inc.*, No. 2:13-CV-567, 2014 WL 31490, at *6 (E.D. Va. Jan. 3, 2014). The rare cases in which a plaintiff's intentional infliction of emotional distress claim has survived threshold scrutiny involved conduct by a defendant that was far more severe and appalling than defendant Faustin's conduct toward plaintiffs here.[4]

---

[4] *See, e.g., Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472–73 (4th Cir. 1999) (during class a teacher intentionally attempted to humiliate a child, knowing that the child was suffering from clinical depression); *Womack*, 215 Va. at. 342–43 (private investigator obtained the photograph of an innocent man to be presented in court as a photograph of a possible suspect in a child molestation prosecution); *Daniczek v. Spencer*, 156 F. Supp. 3d 739, 760–61 (E.D. Va.

Accordingly, plaintiffs have not made the demanding showing of outrageous and intolerable conduct by defendant Faustin that is required to support their intentional infliction of emotional distress claims under Virginia law.[5]

### 3.

In Counts 7 and 8 of the Second Amended Complaint, plaintiffs each bring claims of negligent infliction of emotional distress against defendant Faustin. Such a cause of action is quite limited under Virginia law. In this regard, the Supreme Court of Virginia has held that "where conduct is merely negligent . . . and physical impact is lacking, there can be no recovery for emotional disturbance alone." *Hughes v. Moore*, 214 Va. 27, 34 (1973). Thus, to sustain a claim of negligent infliction of emotional distress in the absence of "physical impact," the plaintiff must show that he or she suffered a "physical injury" and that the "physical injury was the natural result of fright or shock proximately caused by the defendant's negligence." *Id.; see also Goff v. Jones*, 47 F. Supp. 2d 692, 695 (E.D. Va. 1999) ("[A] party may recover for negligent infliction of emotional distress where there is a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury.").

Here, the parties dispute whether plaintiffs have alleged facts showing they suffered any "physical injury" resulting from the emotional distress caused by defendant Faustin's conduct. In

---

2016) (Commonwealth's Attorney took a series of actions to abuse a defense attorney, including assaulting the defense attorney during court, swearing out a warrant for larceny against the defense attorney that he knew lacked probable cause, and releasing documents to a trade publication to damage the defense attorney's reputation).

[5] It is true, as plaintiffs observe, that a defendant's abuse of a position of authority over the plaintiff and the defendant's knowledge of the plaintiff's special susceptibility are relevant to the determination whether the defendant's conduct is extreme and outrageous. *See Baird*, 192 F.3d at 472. Nonetheless, even taking into account plaintiffs' allegations that defendant Faustin was the CFO of plaintiffs' employer and that plaintiff Dao had told defendant Faustin that she does not like to be touched by men because of past sexual abuse, defendant Faustin's conduct does not match the cruel and extraordinary actions by the defendants in cases where the courts have permitted the jury to decide an intentional infliction of emotional distress claims. *See supra* footnote 4. Furthermore, it is important to note that the fact alleged in support of showing defendant Faustin's knowledge of the plaintiffs' special susceptibility—*i.e.* that plaintiff Dao told him that she does not like to be touched by men because of past sexual abuse—is relevant only to plaintiff Dao's claim, and thus there are no facts alleged to show defendant Faustin acted with knowledge of any special susceptibility of plaintiff Khan.

this respect, it is settled that "typical symptoms of an emotional disturbance" do not constitute "physical injury" for purposes of a negligent infliction of emotional distress claim. *Myseros v. Sissler*, 239 Va. 8, 12 (1990). Rather, "the plaintiff must allege and prove that he suffered a physical injury that differs from the symptoms of an emotional disturbance, not . . . a physical ailment caused by emotional distress." *Klar v. Fed. Nat. Mortg. Ass'n*, No. 3:13CV00462-JAG, 2014 WL 412533, at *7 (E.D. Va. Feb. 3, 2014). These principles, applied here, point persuasively to the conclusion that plaintiff Khan has failed to allege facts showing she suffered any physical injury as a result of emotional distress caused by defendant Faustin's conduct. In this respect, plaintiff Khan emphasizes that she alleged defendant Faustin's conduct caused her to suffer migraines, *see* Second Am. Compl. ¶ 94, 185, but the Supreme Court of Virginia and other courts have concluded that such an ailment is merely a physical manifestation of emotional distress, not a physical injury. *See, e.g., Myseros*, 239 Va. at 12 (holding that the plaintiff's headaches were only physical manifestations of anxiety and did not support a claim for negligent infliction of emotional distress); *King v. City of Chesapeake*, 478 F. Supp. 2d 871, 874 (E.D. Va. 2007) (holding that the plaintiff's headaches were only physical manifestations of stress and did not support a claim for negligent infliction of emotional distress). Accordingly, plaintiff Khan has failed to state a claim of negligent infliction of emotional distress under Virginia law.

In contrast, plaintiff Dao has pled sufficient allegations of physical injury to support her negligent infliction of emotional distress claim. Specifically, plaintiff Dao alleges that defendant Faustin's harassing conduct caused her to suffer "colds, sinus infections, upper respiratory infections" and "severe knots in her back." Second Am. Compl. ¶¶ 92, 175. These alleged physical injuries and illnesses differ from the typical symptoms of emotional distress and thus, if proven, are sufficient to allow a jury to find that plaintiff Dao suffered "physical injury" resulting from the

emotional distress caused by defendant Faustin's conduct. Accordingly, plaintiff Dao's claim of negligent infliction of emotional distress alleges adequate facts to survive threshold scrutiny.

**4.**

In Counts 9 and 10 of the Second Amended Complaint, plaintiffs each bring claims of breach of fiduciary duty against defendant Faustin. Under Virginia law, "[t]he elements of a claim for breach of fiduciary duty are (1) a fiduciary duty, (2) breach, and (3) damages resulting from the breach." *Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 424 (E.D. Va. 2011) (citing *Carstensen v. Chrisland Corp.*, 247 Va. 433, 444 (1994)). A fiduciary duty exists "when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence." *H-B Ltd. P'ship v. Wimmer*, 220 Va. 176, 179 (1979). Virginia courts recognize common law-based fiduciary relationships between an attorney and client, an agent and principal, a trustee and *cestui que* trust, parent and child, siblings, and caretaker and invalid. *Martin v. Phillips*, 235 Va. 523, 527–28 (1988), *overruled on other grounds by Friendly Ice Cream Corp. v. Beckner*, 268 Va. 23 (2004); *Rossman v. Lazarus*, No. 1:08-CV-316 (JCC), 2008 WL 4181195, at *9 (E.D. Va. Sept. 3, 2008).

Here, it is clear that defendant Faustin owed no fiduciary duty to plaintiff Dao or plaintiff Khan. As plaintiffs concede, no Virginia court has recognized the existence of a common-law fiduciary duty owed by a supervisor to a subordinate employee. Indeed, Virginia courts have held that an employer owes no fiduciary duty to its employees. *See Wynn v. Wachovia Bank, N.A.*, No. 3:09CV136, 2009 WL 1255464, at *5 (E.D. Va. May 6, 2009) ("[W]hile an employee owes a fiduciary duty to an employer, no corresponding duty is imposed on the employer.") (citing *Williams v. Dominion Tech. Partners, LLC.*, 265 Va. 280, 289 (2003)); *Starks v. McCabe*, 49 Va.

Cir. 554, 560 (1998). Similarly here, it is clear that defendant Faustin, plaintiffs' supervisor, did not owe plaintiffs any fiduciary duty. At most, the allegations in the Second Amended Complaint show that plaintiffs trusted defendant Faustin and that he exercised authority over plaintiffs as their supervisor. These allegations are insufficient to show the existence of a fiduciary relationship. It is well-settled that "[t]rust alone . . . is not sufficient" to create a confidential or fiduciary relationship. *Ayers v. Shaffer*, 286 Va. 212, 225 (2013). And the influence exercised by Faustin over plaintiffs in the workplace is no different from the authority of an employer over an employee, which is insufficient to create a fiduciary duty. *See Wynn*, 2009 WL 1255464, at *5. Accordingly, it is clear based on the allegations in the Second Amended Complaint that plaintiffs cannot establish the existence of any fiduciary duty owed to them by defendant Faustin, and their breach of fiduciary duty claims therefore fail to state a claim.

**5.**

In Counts 11 and 12, plaintiffs each bring claims of negligence separate from the negligent infliction of emotional distress claims discussed above based on defendant Faustin's alleged violation of the common law duty to provide a safe work environment. These claims fail because under Virginia law, it is the employer that has a duty to provide a safe work environment for its employees, *see Bly v. S. Ry. Co.*, 183 Va. 406, 407 (1945), and although defendant Faustin was plaintiffs' supervisor and a part owner of defendant Infused, the company for whom they worked, he was not plaintiffs' employer. Nor have plaintiffs cited any persuasive ground on which to hold defendant Faustin indirectly liable for any breach of the safe-workplace duty that defendant Infused, plaintiffs' then-employer, may conceivably have breached.[6] Accordingly, plaintiffs'

---

[6] Plaintiffs attempt to argue that because defendant Faustin was a part owner and executive of defendant Infused, the company's duty to provide a safe workplace extended to him. In support of this argument, plaintiffs cite *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), in which the Supreme Court applied agency principles to hold that under Title VII an employer may be vicariously liable for certain harassing conduct by a supervisor. But *Faragher* did not

negligence claims based on defendant Faustin's alleged violation of the common law duty to provide a safe work environment fail to state a claim.

## III.

In defendant Infused's motion to dismiss, defendant Infused argues that the state law claims brought against it should be dismissed because the facts alleged do not support (i) vicarious liability for defendant Faustin's alleged tortious conduct or (ii) direct liability for a claim of negligent retention under Virginia law. In addition, defendant Infused maintains that plaintiffs' Title VII claims must be dismissed because (i) the hostile work environment claim is time-barred and otherwise fails to state a claim and (ii) the retaliation claim is unexhausted and otherwise fails to state a claim. Each of plaintiffs' claims against defendant Infused are discussed separately below.

## A.

In Counts 1, 2, 5, 6, 7, and 8, plaintiffs each bring claims of assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress against defendant Infused, alleging that defendant Infused is vicariously liable for defendant Faustin's alleged tortious acts under the doctrine of *respondeat superior*. In the motion to dismiss, defendant Infused

---

reach the inverse conclusion drawn by plaintiffs, *i.e.* that an executive may be held liable for the violations of the company, and indeed principles of agency law do not permit such liability under the circumstances here. Nor does defendant Faustin's partial ownership of defendant Infused automatically cause him to be liable for any alleged negligence by defendant Infused. Indeed, the Supreme Court of Virginia has long observed the "elementary" proposition "that a corporation is a legal entity entirely separate and distinct from the shareholders or members who compose it." *Cheatle v. Rudd's Swimming Pool Supply Co., Inc.*, 234 Va. 207, 212 (1987). Accordingly, to hold an owner of a company liable for the liabilities of the corporate entity, the plaintiff must show that

> [T]he shareholder sought to be held personally liable has controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage. . . . Piercing the corporate veil is justified when the unity of interest and ownership is such that the separate personalities of the corporation and the individual no longer exist and to adhere to that separateness would work an injustice.

*Greenberg v. Commonwealth*, 255 Va. 594, 604, 499 S.E.2d 266, 272 (1998). No such facts are alleged by plaintiffs here, and there is thus no basis for holding defendant Faustin personally liable for any alleged breach by defendant Infused of its duty to provide plaintiffs with a safe workplace.

asserts that the facts alleged do not support a finding of vicarious liability. Defendant Infused is correct.[7]

Under Virginia law, "an employer is liable for the tortious acts of its employee if the employee was performing his employer's business and acting within the scope of his employment when the tortious acts were committed." *Plummer v. Ctr. Psychiatrists, Ltd.*, 252 Va. 233, 235 (1996). In general, an act is "within the scope of the employment" if:

> (1) it was expressly or impliedly directed by the employer, or is naturally incident to the business, and (2) it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, and did not arise wholly from some external, independent, and personal motive on the part of the [employee] to do the act upon his own account.

*Kensington Assocs. v. West*, 234 Va. 430, 432 (1987) (internal quotation marks omitted). As the Supreme Court of Virginia has explained, the determinative issue under this rubric is "whether the service itself, in which the tortious act was done, was within the ordinary course of" the employer's business. *Gina Chin & Assocs., Inc. v. First Union Bank*, 260 Va. 533, 543 (2000).

A comparison of two decisions applying the *Gina Chin* test is instructive here. In *Gina Chin*, a bank teller helped another party embezzle money by accepting checks for deposit that the teller knew were forged. *Id.* at 536–37. The Supreme Court of Virginia held that a jury could find that the bank teller committed such tortious activity within the scope of his employment because "the service itself, in which the tortious act was done," *i.e.* accepting checks for deposit, "was within the ordinary course of" the employer's business. *Id.* at 544. In this regard, the Supreme

---

[7] It is worth noting that plaintiff Khan's claim of negligent infliction of emotional distress against defendant Infused and plaintiffs Dao and Khan's claims of intentional infliction of emotional distress against defendant Infused must be dismissed for the additional reason that plaintiffs fail to state a claim against defendant Faustin with respect to each of those claims. *See supra* part II.B.

Court of Virginia emphasized that in participating in a scheme to deposit forged checks, the teller "was performing a normal function of a bank teller." *Id.* at 545.

The facts in *Blair v. Def. Servs., Inc.*, 386 F.3d 623 (4th Cir. 2004) contrast sharply with *Gina Chin.* In *Blair*, a janitor providing janitorial services on a college campus entered a bathroom and strangled a student who was inside. *Id.* at 625–26. The Fourth Circuit held that the janitor was not acting within the scope of his employment because the plaintiff had not shown that "the service itself, in which the tortious act was done, was within the ordinary course of the employer's business," as is required under Virginia law. *Id.* at 627–28 (quoting *Gina Chin*, 260 Va. at 544). In particular, the Fourth Circuit observed that the janitor's "act was so great a deviation from [his employer's] business" that he clearly acted outside the scope of his employment; indeed, the janitor's "actions had nothing to do with his performance of janitorial services." *Id.*

Application of these decisions to the facts alleged here points persuasively to the conclusion that defendant Faustin was not "acting within the scope of his employment" when he allegedly committed the tortious acts at issue in this case. Plaintiffs have alleged no facts showing that defendant Faustin's alleged tortious acts were done in the performance of any service that was within the ordinary course of the business of his employer, defendant Infused. *See Gina Chin*, 260 Va. at 543. To the contrary, like the janitor's action in *Blair*, defendant Faustin's alleged harassing conduct here—forcibly making physical contact with subordinates' bodies, making embarrassing comments, commenting on subordinates' physical appearance—have "nothing to do with his performance of" his services as CFO of defendant Infused. *See Blair*, 386 F.3d at 627. In addition, it is clear here that defendant Faustin took such actions purely because of personal motives and not to further the interest of his employer, which further weighs against a finding that his conduct was within the scope of his employment. *See Gina Chin*, 260 Va. at 543 ("[T]he employee's

improper motive is not irrelevant to the issue whether the act was within the scope of employment."). Accordingly, *Gina Chin* and *Blair* make clear that defendant was not acting within the scope of his employment.[8]

Seeking to avoid this conclusion, plaintiffs in essence argue that defendant Faustin's actions were taken within the scope of his employment because his position as CFO of defendant Infused facilitated his tortious conduct. This argument fails because "[i]t is well established that the simple fact that an employee is at a particular location at a specific time as a result of his employment is not sufficient to impose *respondeat superior* liability on the employer." *Blair*, 386 F.3d at 627 (citing *Cary v. Hotel Rueger, Inc.*, 195 Va. 980, 986 (1954)). The holding by another district court within this district in *Jones v. Tyson Foods, Inc.*, 378 F. Supp. 2d 705 (E.D. Va. 2004), *aff'd* 126 F. App'x 106 (4th Cir. 2005), is also instructive on this point. There, the plaintiff's supervisor called the plaintiff into his office, closed the door, asked her "how she would feel about dating an older man and how she would feel about going out with him," hugged her, told her he wanted to kiss her, grabbed her buttocks, and simulated sexual intercourse by pressing his pelvic area into hers. *Id.* at 710. Notwithstanding the facts (i) that the supervisor had "supervisory authority" over the plaintiff and (ii) that the supervisor's "actions took place at the work place," specifically inside the supervisor's closed office, the *Jones* court held that the supervisor's acts

---

[8] As the Supreme Court of Virginia has noted, "determination of the issue whether the employee's wrongful act was within the scope of his employment under the facts of a particular case has proved 'vexatious.'" *Gina Chin*, 260 Va. at 540–41. Nonetheless, courts have generally focused on the degree to which the wrongful conduct was related to or arose out of the nature of the employment. *See e.g., Doyle–Penne v. Muhammad*, No. 99–2101, 2000 WL 1086906, at *1–2 (4th Cir. Aug. 4, 2000) (a workplace altercation between two employees occurred within the scope of employment because the altercation occurred after the plaintiff objected to the curt manner in which a coworker transferred a telephone call to her and transferring telephone calls was part of the coworker's duties); *Heckenlaible v. Va. Peninsula Reg'l Jail Auth.*, 491 F. Supp. 2d 544 (E.D. Va. 2007) (corrections officer was engaged in his duties, *i.e.* performing a cell search, when he sexually assaulted the prisoner, and thus the assault occurred within the scope of employment); *Gulf Underwriters Ins. Co. v. KSI Servs., Inc.*, 416 F. Supp. 2d 417, 423–24 (E.D. Va. 2006) (bookkeeper acted within scope of employment by embezzling funds from her employer because her position as bookkeeper gave her access to the funds she embezzled and she was responsible as bookkeeper for facilitating and recording transfers of funds from her employer to its customers).

were not done within the scope of his employment because he "was not engaged in his workplace duties or functions when he asked Plaintiff on a date, attempted to kiss her, and touched her inappropriately." *Id.* at 714.

Similarly here, defendant Faustin's position as plaintiffs' supervisor and his proximity to plaintiffs in their workplaces may have facilitated his alleged tortious conduct, but that alone is insufficient to show that he was acting within the scope of his employment when he committed the alleged torts. Rather, for the reasons already stated, defendant Faustin's actions, like the supervisor's in *Jones*, had nothing to do with his duties as CFO of defendant Infused or as plaintiffs' supervisor. Accordingly, plaintiffs have failed to allege facts sufficient to show defendant Faustin's alleged conduct was committed within the scope of his employment, and defendant Infused may not be held vicariously liable for Counts 1, 2, 5, 6, 7, and 8 under a *respondeat superior* theory.

## B.

In Counts 3 and 4, plaintiffs each bring claims of negligent retention against Infused based on defendant Infused's failure to fire defendant Faustin. To establish a claim for negligent retention under Virginia law, a plaintiff must show that (i) "she suffered an adequate level of 'harm' as a result of [the dangerous employee's] actions" and (ii) the dangerous employee's conduct was the "type of conduct . . . necessary to place a defendant on notice that it employs a 'dangerous employee . . . likely to harm.'" *Ingleson v. Burlington Med. Supplies, Inc.*, 141 F. Supp. 3d 579, 585 (E.D. Va. 2015) (quoting *Se. Apartment Mgmt., Inc. v. Jackson*, 257 Va. 256, 260 (Va. 1999)).

As the Fourth Circuit has observed, Virginia law "generally recognizes that a plaintiff may not recover for emotional injury resulting from the defendant's negligence without proof of contemporaneous physical injury." *Elrod v. Busch Entm't Corp.*, 479 F. App'x 550, 551 (4th Cir.

2012) (citing *Myseros*, 239 Va. at 12; *Hughes*, 214 Va. at 34). In particular, the Supreme Court of Virginia has held that in a claim for negligence, "there can be no recovery for emotional disturbance alone," but a plaintiff may recover if she demonstrates "emotional disturbance [a]nd physical injury resulting therefrom." *Hughes*, 214 Va. at 34; *see also Myseros*, 239 Va. at 12. Although the Supreme Court of Virginia has not specifically addressed whether this rule applies to negligent retention claims, courts have widely and sensibly extended the *Hughes* physical injury requirement to actions for negligent retention. *See Pini v. Staybright Elec. of Colorado*, No. 1:17-CV-739, 2018 WL 3536417, at *10 & n.9 (E.D. Va. July 20, 2018) (collecting cases). Accordingly, to establish the first element of their negligent retention claims—that defendant Faustin's actions caused plaintiffs to suffer an adequate level of harm—plaintiffs must show not only that such conduct caused emotional disturbance but also resulting physical injury.

Here, for the reasons already stated above, *see supra* part II.B.3, plaintiff Khan has failed to allege facts showing she suffered any physical injury as a result of emotional distress caused by defendant Faustin's conduct. Indeed, courts have specifically held that the symptom allegedly suffered by plaintiff Khan, namely migraines, "are not sufficiently serious and significant physical injuries to maintain her negligent retention claim" under Virginia law. *Ingleson v. Burlington Med. Supplies, Inc.*, 141 F. Supp. 3d 579, 586 (E.D. Va. 2015). In contrast, for the reasons already stated above, *see supra* part II.B.3, plaintiff Dao has pled sufficient allegations of physical injury to satisfy the first element of her negligent retention claim. *See* Second Am. Compl. ¶ 134 (alleging that "[a]s a direct result of Mr. Faustin and Infused Solutions actions, Ms. Dao was also constantly ill with colds, sinus infections, upper respiratory infections, and gastrointestinal issues" and that "Ms. Dao has developed severe knots in her back that cause severe migraines and loss of vision").

With respect to the second element of a negligent retention action, plaintiffs must demonstrate that defendant Infused was "on notice that it employs a dangerous employee . . . likely to harm." *Ingleson*, 141 F. Supp. 3d at 585. In this respect, plaintiffs do not contend that defendant Faustin's actions put any officer or employee of defendant Infused other than defendant Faustin and plaintiffs on notice of his propensity to harass female subordinates. Instead, plaintiffs allege that defendant Faustin was aware of his own harassing conduct and tendencies and that, as an executive and part owner of defendant Infused, his knowledge is imputed to defendant Infused. Under Virginia law, the knowledge of officers and directors who are "substantially in control of a corporation" may be imputed to that corporation. *Buffalo Wings Factory, Inc. v. Mohd*, No. 1:07CV612 (JCC), 2008 WL 4642163, at *8 (E.D. Va. Oct. 15, 2008).[9] As the Fourth Circuit has observed, "cases in which knowledge of one or more officers, directors and owners of a business entity was imputed to that entity all involved situations where there existed no real possibility of any corporate control in persons other than the wrongdoers." *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.*, 427 F.2d 862, 870 (4th Cir. 1970). In accordance with this limitation on imputing an individual's knowledge to a corporation, decisions that have upheld negligent retention claims based on a tortfeasor's own failure to fire himself involved facts where the tortfeasor was the sole owner of the company or was the alter ego of the company.[10]

---

[9] *See also J.W. Woolard Mech. & Plumbing, Inc. v. Jones Dev. Corp.*, 235 Va. 333, 335, 336 (1988) (holding that a corporation had knowledge based on the knowledge of its president and co-owner); *Horne v. Holley*, 167 Va. 234, 240 (1936) (holding that a corporation had knowledge based on the knowledge of an individual who was its president, majority stockholder, and one of three directors).

[10] *See Fiorito v. Metro. Aviation*, No. 1:17-CV-731, 2018 WL 3730071, at *9–10 (E.D. Va. Aug. 3, 2018) (denying summary judgment against claim of negligent retention where the tortfeasor was the sole owner of the defendant corporations); *Terrell v. OTS Inc.*, No. 1:09-CV-626-RWS, 2011 WL 2619080, at *1–2 (N.D. Ga. July 1, 2011), *aff'd*, 470 F. App'x 845 (11th Cir. 2012) (denying motion for judgment as a matter of law against the plaintiff's negligent retention claim where the tortfeasor was the sole owner and alter ego of the defendant corporation); *Forsberg v. Pefanis*, No. CIVA1:07-CV-03116JOF, 2009 WL 4798124, at *13–14 (N.D. Ga. Dec. 8, 2009), *aff'd*, 634 F. App'x 676 (11th Cir. 2015) (denying the defendant's motion for a new trial on the plaintiff's negligent retention claim where (i) the tortfeasor was the majority owner, CEO, CFO, and alter ego of the defendant corporation and (ii) other officers of the corporation were aware of the tortfeasor's conduct). *But see Glover v.*

Here, plaintiffs have not alleged facts showing that defendant Faustin was the sole owner of defendant Infused or that he had sufficient ownership or control over defendant Infused to be deemed the company's alter ego. Accordingly, because the allegations in the Second Amended Complaint show that defendant Faustin was not "substantially in control of [defendant Infused]," his knowledge is not automatically imputed to defendant Infused, *see Buffalo Wings Factory*, 2008 WL 4642163, at *8, and plaintiffs thus cannot meet the second element of their negligent retention claims.

In sum, for the preceding reasons, (i) plaintiff Khan has failed to allege facts sufficient to demonstrate that she suffered adequate physical injury as a result of defendant Faustin's actions, as is required by the first element of a negligent retention action, and (ii) neither plaintiff has alleged facts demonstrating that defendant Infused was placed on notice of defendant Faustin's harassing behavior and propensity, as required by the second element. Therefore, plaintiffs Dao and Khan have both failed to state a claim of negligent retention under Virginia law against defendant Infused.

## C.

In Counts 13 and 14, plaintiffs each bring claims of hostile work environment under Title VII against defendant Infused. In response, defendant Infused argues that plaintiffs have failed to state a claim because (i) plaintiffs' claims are time-barred, (ii) plaintiffs have not alleged sufficiently severe or pervasive conduct by defendant Faustin, and (iii) defendant Infused is

---

*Oppelman*, 178 F. Supp. 2d 622, 644 (W.D. Va. 2001) (granting summary judgment in favor of the defendant on the plaintiff's negligent retention claim based in part on the district court's "strong doubts whether this tort applies to business organizations in which the tortfeasor is the only person who has power not to retain the tortfeasor").

It is also worth noting that in decisions upholding negligent retention claims based on a tortfeasing officer's own failure to fire himself, courts have expressed the concern that to hold otherwise would "exempt the corporation for liability for negligent retention" if the tortfeasing officer is the only individual with the authority to take remedial action on behalf of the corporation. *See Fiorito*, 2018 WL 3730071, at *10; *Terrell v. OTS Inc.*, No. 1:09-CV-626-RWS, 2011 WL 2619080, at *1–2. This concern is clearly not present where, as here, there are other officers available to fire or control the tortfeasing officer on behalf of the corporation.

shielded from liability by the *Faragher–Ellerth* affirmative defense. Each of these arguments is addressed separately below.

**1.**

Defendant Infused first argues that plaintiffs' hostile work environment claims must be dismissed as time-barred. In states that have a state deferral agency, such as Virginia, Title VII requires an employee to file a charge with the EEOC within three hundred days after the occurrence of the alleged unlawful employment practice. In this case, both plaintiffs filed charges with the EEOC on January 9, 2018. Accordingly, plaintiffs must allege that defendant engaged in unlawful employment practices after March 15, 2017, which is three hundred days before the date plaintiffs filed their EEOC charges.

Here, plaintiffs' hostile work environment claims are not time-barred for two reasons. First, it is clear that plaintiffs' claims are based in part on alleged conduct taking place after March 15, 2017. For example, plaintiffs allege that they worked in the same office as defendant Faustin during a period of time including March 15, 2017 through April 24, 2017 and that during that time defendant forcibly made physical contact with plaintiffs' bodies "on a near daily basis." Second. Am. Compl. ¶¶ 42–43, 69, 71, 85–88. And contrary to defendant Infused's argument, the fact that the exact dates of such conduct by defendant Faustin are not alleged does not warrant threshold dismissal of plaintiffs' claims as time barred.[11] Second, plaintiffs have alleged conduct occurring

---

[11] *See Meridian Investments, Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F.3d 573, 577 (4th Cir. 2017) ("A defendant's claim that an action is time-barred is an affirmative defense that it can raise in a motion to dismiss when the face of the complaint includes all necessary facts for the defense to prevail.") (internal quotation marks omitted); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007) (holding that because the burden of proving an affirmative defense is on the defendant, the defendant must show at the 12(b)(6) stage that "plaintiff's potential rejoinder to the affirmative defense was foreclosed by the allegations in the complaint" and that "[t]o require otherwise would require a plaintiff to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised"); *McPike v. Zero-Gravity Holdings, Inc.*, 280 F. Supp. 3d 800, 807–08 (E.D. Va. 2017) (holding that only when "all the facts necessary for resolution of the motion [claiming an affirmative defense] appear on the face of the complaint or are otherwise indisputable" may a statute of limitations defense be granted at the 12(b)(6) stage). The case relied upon by defendant Infused, *Graudins*

22

before March 15, 2017 that may be considered under the continuing violation doctrine. In this respect, the Supreme Court has made clear that where, as here, a plaintiff asserts a hostile work environment claim, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability" provided that "an act contributing to the claim occurs within the filing period." *Nat'l R&R Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). Thus, defendant Infused has failed to demonstrate at this stage that plaintiffs' hostile work environment claims are time-barred.

**2.**

Defendant Infused next argues that plaintiffs have not alleged sufficiently severe or pervasive conduct taken by defendant Faustin to state actionable hostile work environment claims. To state a claim of hostile work environment under Title VII, a plaintiff must show, *inter alia*, "that the offending conduct . . . was sufficiently severe **or** pervasive to alter the conditions of her employment and create an abusive work environment." *Ziskie v. Mineta*, 547 F.3d 220, 224 (4th Cir. 2008) (emphasis added). As the Fourth Circuit has explained, "[t]here is no 'mathematically precise test' for determining if an environment is objectively hostile or abusive." *E.E.O.C. v. Fairbrook Med. Clinic, P.A.*, 609 F.3d 320, 328 (4th Cir. 2010) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)). Instead, based on all the circumstances, a reasonable person in the plaintiff's position must find the environment to be hostile or abusive. *Ziskie*, 547 F.3d at 227 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). These circumstances

---

*v. Retro Fitness, LLC*, 921 F. Supp. 2d 456 (E.D. Pa. 2013), does not hold to the contrary. There, the district court held that *at the summary judgment stage* the plaintiff's state law hostile work environment claims were time-barred because the plaintiff had not presented evidence that an act contributing to a hostile work environment occurred on a specific date within the applicable limitations period. *Id.* at 463. In so holding, the *Graudins* court explained that at "a plaintiff cannot rely on unsupported allegations in [her] complaint to survive a motion for summary judgment." *Id.* This is not the standard at the motion to dismiss stage, as the above-cited authorities from the Fourth Circuit confirm. To the contrary, if "the face of the complaint does not allege facts sufficiently clear to conclude that the statute of limitations had run," dismissal under Rule 12(b)(6) is not permitted. *Goodman*, 494 F.3d at 466.

include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. And importantly, this inquiry also "requires careful consideration of the social context in which particular behavior occurs and is experienced by its target," *Oncale*, 523 U.S. at 81, as "[c]onduct which is considered normal and appropriate in one setting may be deemed abusive or hostile in another," *Fairbrook Med. Clinic, P.A.*, 609 F.3d at 328. In light of the fact-intensive nature of this inquiry, the Fourth Circuit has made clear that "whether the harassment was sufficiently severe or pervasive to create a hostile work environment is 'quintessentially a question of fact' for the jury." *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 199–200 (4th Cir. 2000) (quoting *Smith v. First Union Nat. Bank*, 202 F.3d 234, 243 (4th Cir. 2000)).

Here, plaintiffs have alleged facts from which a jury could reasonably find that defendant Faustin's conduct was sufficiently pervasive to alter the conditions of plaintiffs' employment and create an abusive work environment. First, the Second Amended Complaint alleges that defendant Faustin frequently made unwanted, forcible physical contact with plaintiffs' bodies. In particular, plaintiff Dao alleges that defendant Faustin (i) "on a near daily basis" forcibly pulled her into an extended hug, (ii) "often" put his hand on her lower back, and (iii) "on several occasions" grabbed her hand while they were in a moving car together. Second Am. Compl. ¶¶ 40, 42–45. Similarly, plaintiff Khan alleges that defendant Faustin (i) "at the end of each day" forcibly hugged her and (ii) made "constant" comments about her appearance "during the work day and after work hours." *Id.* ¶¶ 58–59, 67, 69.

Second, the physically threatening and humiliating nature of the alleged conduct and its severity are not inconsiderable. Plaintiffs allege that defendant Faustin's physical contact with

their bodies was forcible and that he disregarded their repeated pleas that he not touch them. In addition, plaintiff Dao alleges that she told defendant Faustin she did not like to be touched by men because of childhood sexual abuse, yet he persisted in his conduct. And, as the Fourth Circuit has recognized, a jury could reasonably conclude that the "severity of [defendant Faustin's] conduct was exacerbated by the fact that" as an executive and part owner of defendant Infused, defendant Faustin had "significant authority" over plaintiffs and "the ability to influence . . . [their] career[s]." *See Fairbrook Med. Clinic*, 609 F.3d at 329.

Third, plaintiffs have alleged facts showing that defendant Faustin's harassing actions unreasonably interfered with their work performance. Indeed, according to the Second Amended Complaint, as a result of defendant Faustin's conduct it became impossible for plaintiffs to work for defendant Infused, and plaintiffs eventually had to work from home and then take leaves of absence. Second Am. Compl. ¶¶ 86–88.

Fourth, it is important to give "careful consideration of the social context" in which defendant Faustin's behavior occurred and was experienced by plaintiffs. *See Oncale*, 523 U.S. at 81. Although defendant Faustin's actions—hugs, massages, hand holding, compliments, and other physical contact and comments—may in certain contexts be innocuous, "[c]onduct which is considered normal and appropriate in one setting may be deemed abusive or hostile in another." *Fairbrook Med. Clinic, P.A.*, 609 F.3d at 328. Here, viewed in the light most favorable to plaintiffs, a jury could certainly find that under the circumstances, defendant Faustin's conduct rises to the level of abusive and hostile harassment. Specifically, the Second Amended Complaint alleges that defendant Faustin's actions were done despite the following facts: (i) plaintiffs repeatedly told defendant Faustin not to touch them, (ii) plaintiffs struggled to free themselves from defendant Faustin's physical contact, (iii) plaintiff Khan began crying in front of defendant Faustin when he

would not leave her alone, and (iv) plaintiff Dao told defendant Faustin that it was distressing to be touched by men because of past sexual abuse.

Accordingly, for the above reasons, when viewed in the light most favorable to plaintiffs, the Second Amended Complaint alleges facts from which a jury could reasonably conclude that defendant Faustin's harassing behavior toward plaintiffs was sufficiently pervasive to alter the conditions of their employment and create an abusive work environment.

### 3.

Third, and lastly, defendant Infused argues that plaintiffs have not alleged facts sufficient to impute liability for defendant Faustin's acts to defendant Infused. To state a claim against an employer for creating a hostile work environment under Title VII, a plaintiff must show, *inter alia*, "that the offending conduct . . . was imputable to her employer." *Ziskie*, 547 F.3d at 224. And importantly, the Supreme Court in *Faragher v. Boca Raton*, 524 U.S. 775 (1998), and *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998), has recognized an affirmative defense to liability by an employer for harassment by a supervisor. Specifically, the *Faragher–Ellerth* doctrine provides a defense to the charge of supervisory harassment if (1) "the employer took no tangible employment action against the victim," (2) "the employer 'exercised reasonable care to prevent and correct promptly any sexually harassing behavior,'" and (3) "'the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 328 (4th Cir. 2012) (quoting *Ellerth*, 524 U.S. at 765). Defendant Infused argues that plaintiffs' factual allegations demonstrate that it is entitled to this affirmative defense and thus that liability for defendant Faustin's conduct cannot be imputed to defendant Infused.

26

Defendant Infused's argument fails to persuade for two reasons. First, the *Faragher–Ellerth* defense is unavailable to an employer where, as here, the harassing individual is sufficiently high-ranking to be deemed the employer's "proxy." In *Faragher*, the Supreme Court cited approvingly its earlier decision in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993), where it held a corporation vicariously liable for the harassing conduct of its president "who was indisputably within that class of an employer organization's officials who may be treated as the organization's proxy." *Faragher*, 524 U.S. at 789. Based on this language in *Faragher*, several courts of appeals have held that an employer is vicariously liable for harassing conduct by an individual who holds a sufficiently high-ranking position to be deemed the employer's "proxy," and that in such a case the *Faragher–Ellerth* defense is unavailable to the employer. *See Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 383–84 (5th Cir. 2003); *Johnson v. West*, 218 F.3d 725, 730 (7th Cir. 2000); *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 516 (9th Cir. 2000); *Dees v. Johnson Controls World Servs., Inc.*, 168 F.3d 417, 421 (11th Cir. 1999). This same approach has also been adopted by district courts within the Fourth Circuit. *See, e.g., Bishop-Joseph v. Monroe*, No. CIVA 5:04-2319 RBH, 2007 WL 2008551, at *1 (D.S.C. July 5, 2007); *Haught v. The Louis Berkman, LLC*, 377 F. Supp. 2d 543, 554 (N.D.W. Va. 2005).[12]

---

[12] It appears that the Fourth Circuit has yet to decide the question whether an employer may raise the *Faragher–Ellerth* defense against liability for harassing behavior taken by an individual deemed to be the employer's proxy. *See Fairbrook Med. Clinic*, 609 F.3d at 331. Yet, at least one other district court within the Fourth Circuit has surmised that "the Fourth Circuit would follow what appears to be the majority rule, that the *Faragher/Ellerth* defense does not apply where the alleged harasser is the organization's proxy." *Bishop-Joseph v. Monroe*, No. CIVA 5:04-2319 RBH, 2007 WL 2008551, at *1 (D.S.C. July 5, 2007). This is so, according to that district court, because in a decision predating *Faragher* and *Ellerth*, the Fourth Circuit held that "[e]xcept in situations where a proprietor, partner or corporate officer participates personally in the harassing behavior, the plaintiff will have the additional responsibility of demonstrating the propriety of holding the employer liable under some theory of *respondeat superior*," which appears to remain good law after *Faragher* and *Ellerth*. *Katz v. Dole*, 709 F.2d 251, 255 (4th Cir. 1983); *see also Mikels v. City of Durham, N.C.*, 183 F.3d 323, 329 n.4 (4th Cir. 1999) (recognizing that the appropriate basis of liability by employers is "direct negligence," not imputed liability through *respondeat superior*, but holding that the "mischaracterization [in *Katz*] has had no substantive effect on our application of the standard") (citing *Ellerth*, 524 U.S.).

As those decisions have recognized, "a president, owner, proprietor, partner, corporate officer," and certain high-level supervisors are treated as the employer's "proxy" for purposes of liability in the hostile work environment context. *See Johnson*, 218 F.3d at 730; *accord Ackel*, 339 F.3d at 384 (requiring the harassing individual to hold "a sufficiently high position in the management hierarchy so as to speak for the corporate employer") (internal quotation marks omitted); *Passantino*, 212 F.3d at 516. Here, plaintiffs allege that at the time of his alleged harassment of plaintiffs, defendant Faustin was the CFO and part owner of defendant Infused. Accordingly, defendant Faustin was clearly within the class of high-ranking individuals deemed to be defendant Infused's "proxy" for purposes of liability under Title VII, and defendant Infused is thus vicariously liable for his conduct and cannot avail itself of the *Faragher–Ellerth* defense.

Second, even assuming, *arguendo*, that defendant Infused is not barred from asserting the *Faragher–Ellerth* defense, a jury could reasonably find from the facts alleged in the Second Amended Complaint that defendant Infused did not "exercise[] reasonable care to prevent and correct promptly any sexually harassing behavior," as is required under *Faragher* and *Ellerth*. *See Dulaney*, 673 F.3d at 328. Plaintiffs allege that after they complained of defendant Faustin's conduct to HR, HR representatives told plaintiff Dao that she would no longer work under defendant Faustin and that he would not have direct contact with her, but plaintiff Dao remained assigned to the same contract as defendant Faustin. Second Am. Compl. ¶ 82. And according to the Second Amended Complaint, defendant Infused never imposed any disciplinary measures against defendant Faustin other than directing him to work from home for one week. *Id.* ¶¶ 80, 83, 85. Defendant Infused has cited no persuasive authority to support its argument that such efforts were reasonable as a matter of law. Thus, it is inappropriate at this stage of the litigation to hold

as a matter of law that defendant Infused exercised reasonable care to prevent and correct promptly any sexually harassing behavior.

Accordingly, for these reasons, defendant Infused has failed to demonstrate that it is shielded by the *Faragher–Ellerth* defense against liability for the alleged conduct by defendant Faustin that is the subject of plaintiffs' hostile work environment claims.[13]

### D.

In Counts 15 and 16, plaintiffs each bring claims of retaliation under Title VII against defendant Infused. In response, defendant Infused argues that plaintiffs have failed to state a claim because (i) plaintiffs did not exhaust their claims of retaliation based on cessation of pay before the EEOC and (ii) plaintiffs' claims of retaliation based on defendant Infused allowing defendant Faustin to return to work fails to allege an adverse employment action. Defendant Infused is correct.

According to the Second Amended Complaint, defendant Infused retaliated against plaintiffs for complaining about defendant Faustin's behavior by permitting defendant Faustin to return to work without facing sufficient disciplinary action. Second Am. Compl. ¶ 85, 239, 243. Plaintiffs also allege that defendant Infused retaliated against them by eventually cutting off their pay after they had been put on administrative leave at their own request. *Id.* at ¶¶ 87–89.[14]

It is well-settled that a plaintiff lacks "standing to file suit under Title VII" unless he first "exhaust[s] his administrative remedies by filing a charge with the EEOC." *Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002).[15] And importantly, the Fourth Circuit has held

---

[13] Plaintiffs also argue that the *Faragher–Ellerth* defense is inapplicable here because they suffered a tangible employment action. Because defendant Infused is precluded from availing itself of the *Faragher–Ellerth* defense for the two reasons stated above, it is unnecessary to address or decide this additional argument by plaintiffs.

[14] Plaintiffs acknowledge that they have not exhausted any claim of retaliatory discharge. *See* Dkt. 25 at 28–29.

[15] The Supreme Court has recently clarified in a unanimous decision that Title VII's charge-filing requirement governs "a party's procedural obligations," but is "not a jurisdictional prescription delineating the adjudicatory

that "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005).

Here, plaintiffs failed to exhaust any claim of retaliation based on defendant Infused cutting off their pay. In their nearly-identical charges filed with the EEOC, plaintiffs alleged that defendant Infused retaliated against them by "fail[ing] to protect [plaintiffs] from [defendant] Faustin, who came and went from the office and continued to contact [plaintiffs]." It is clear that plaintiffs did not assert a claim of retaliation based on cessation of pay in this charge, nor is such a claim "reasonably related" to the claims stated in the charge. *See Chacko*, 429 F.3d at 506. As the Supreme Court has explained:

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and *each retaliatory adverse employment decision* constitutes a separate actionable "unlawful employment practice." [A plaintiff] can only file a charge to cover discrete acts that "occurred" within the appropriate time period.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (emphasis added). A cessation of pay is plainly an individual "discrete act" that must be specifically raised in a plaintiff's administrative charge in addition to any other claimed events of retaliation. *See Navey v. Virginia Beach City Pub. Sch.*, No. 2:11CV142, 2011 WL 13192916, at *2 (E.D. Va. Sept. 28, 2011), *aff'd*, 472 F. App'x 188 (4th Cir. 2012) ("Plaintiff's Charges only claimed she was retaliated against when she was put on administrative leave and when she was terminated. The Court therefore

---

authority of courts." *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019). Accordingly, dismissal is appropriate under Rule 12(b)(6), not 12(b)(1).

cannot consider any other claimed events of retaliation."). Accordingly, plaintiffs have failed to exhaust any claim of retaliation based on defendant Infused's decision to cut off their pay.[16]

Next, with regard to the alleged retaliatory conduct by defendant Infused that plaintiffs did exhaust—namely permitting defendant Faustin to return to work without facing sufficient disciplinary action—it is clear that such conduct does not support an actionable claim of retaliation. To state a claim of retaliation, plaintiffs must show "(1) that [they] engaged in a protected activity; (2) that [their] employer took an adverse employment action against [them]; and (3) that a causal connection existed between the protected activity and the asserted adverse action." *King v. Rumsfeld*, 328 F.3d 145, 150–51 (4th Cir. 2003). The Fourth Circuit has made clear that "[a]n adverse employment action is a discriminatory act which 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001)) (internal quotation marks omitted). Put simply, an act by an employer must cause "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion" to constitute an "adverse employment action" for purposes of Title VII. *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999).

These principles, applied here, confirm that the alleged retaliatory act taken by defendant Infused against plaintiffs, *i.e.* permitting defendant Faustin to return to work without facing sufficient disciplinary action, is not an "adverse employment action." Although allowing defendant

---

[16] *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297 (4th Cir. 2009), cited by plaintiffs, does not alter the result reached here. There, the Fourth Circuit held that "the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge *and growing out of such allegations during the pendency of the case before the Commission.*" *Id.* at 302 (emphasis added). Here, there are no facts alleged in the Second Amended Complaint to show that defendant Infused's alleged cessation of plaintiffs' pay grew out of the retaliation claims filed with the EEOC while such claims were pending before the EEOC. Thus, *Jones* is inapposite to the instant case.

Faustin to return to work may have demonstrated to plaintiffs that defendant Infused "Infused was going to support [defendant] Faustin over them and that their complaints would not be addressed," *see* Second Am. Compl. ¶ 85, that decision did not discharge or demote plaintiffs, decrease their pay or benefits, deprive plaintiffs of job title or supervisory responsibility, or reduce their opportunities for promotion. Accordingly, because plaintiffs have failed to show that the timely exhausted retaliatory acts alleged in the Second Amended Complaint constituted an adverse employment action, plaintiffs have failed to state a claim of retaliation under Title VII.

An appropriate order will issue.

Alexandria, Virginia
August 29, 2019

/s/

T. S. Ellis, III
United States District Judge